IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| Renae Schlittenhard, | ) | |
| | ) | **ORDER** |
| Plaintiff, | ) | **ON SUMMARY JUDGMENT** |
| | ) | **MOTIONS** |
| vs. | ) | |
| | ) | Civil File No. 3:06-cv-100 |
| Michael J. Astrue, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court are cross-summary judgment motions (Doc. #12 and 16). Each party filed a brief in support of his or her motion and responded to the opposing motion.

## SUMMARY OF DECISION

Despite claimant's subjective complaints, the Commissioner's findings are supported by substantial evidence in the records as a whole. Therefore, Plaintiff's Motion for Summary Judgment is denied and Defendant's Motion for Summary Judgment is granted.

## FACTS

Renae Schlittenhard is a 42-year-old woman who suffers from numerous physical, medical, and mental impairments. Schlittenhard is a morbidly obese diabetic with a history of migraine headaches, depression and anxiety, and mild lumbar scoliosis, which is aggravated by her obesity. Schlittenhard lives with her daughter, whom she home-schools, and her sister. Schlittenhard's employment history prior to 1999 includes periods of both full-time and part-time employment, as well as unemployment, and includes acting as a hotel maid, hotel launderer, and a job coach. In 1999, Schlittenhard and her sister began a daycare business, which they owned and ran jointly.

Schlittenhard alleges that since January 1, 2004, her disability has prevented her from working more than an hour or two per day. In fact, she has not engaged in substantial gainful activity at any time relevant to these proceedings.

Schlittenhard filed her application for disability benefits under Title II/XVI on April 7, 2004. Her application was denied initially and upon reconsideration (Tr. 34-46). Upon her request, an administrative law judge ("ALJ") held a hearing on the matter on April 13, 2006. The ALJ issued an opinion with the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b) and 416.920(b)).
3. The claimant has the following severe impairments: morbid obesity (5 feet tall and 287 pounds at hearing); type II diabetes mellitus with diabetic peripheral neuropathy; a history of migraine headaches; mild lumbar scoliosis; depression; and an anxiety disorder, NOS (20 CFR 404.1520(c) and 416.920(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry up to 10 pounds on an occasional basis and less than 10 pounds on a frequent basis; stand and/or walk (with normal breaks) for a total of about 2 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; engage in push/pull activities with the bilateral lower extremities on an occasional basis but not at a resistance greater than sedentary; climb ramps/stairs, balance, crouch and stoop on an occasional basis; never climb ladders/ropes/scaffolds, kneel or crawl; and she must avoid concentrated exposure to hazards. Mentally, claimant is able to understand, remember and carry out short, simple instructions; interact appropriately with the public, supervisors and co-workers on a brief and superficial basis; respond appropriately to changes in a routine work environment; and make judgments on simple work-related decisions.
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

    7.      The claimant was born on June 4, 1965 and was 38 years old on the alleged disability onset date, which is defined as a younger individual age 18-44 (CFR 404.1563 and 416.963).

    8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

    9.      Transferability of job skills is not material to the determination of disability due to the claimant's age (20 CFR 404.1568 and 416.968).

    10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

    11.    The claimant has not been under a "disability" as defined in the Social Security Act, from January 1, 2004, through the date of this decision (20 CFR 404.1520(g) and 416.920(g).

(Tr. 15-23). The Commissioner argues that substantial evidence supports these findings made by the ALJ and therefore summary judgment is appropriately granted for him. Schlittenhard does not dispute findings 1-4 or 6-9 but argues that there is no substantial evidence to support findings 5, 10, and 11, and therefore judgment should be granted, as a matter of law, in her favor. Because these two motions are two sides of the same coin, they will be discussed together.

## DISCUSSION

The standard of review applied to determinations of the Commissioner is deferential, and the Commissioner's findings are to be affirmed if supported by substantial evidence in the records as a whole. Dixon v. Barnhart, 353 F.3d 602, 604 (8th Cir. 2003). Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's decision. Sultan v. Barnhart, 368 F. 3d 857, 862 (8th Cir. 2004). In order to determine whether evidence is substantial, the court considers "evidence that detracts from the commissioner's decision as well as the evidence that supports it." Id. at 863. The Commissioner's decision is not subject to reversal simply because the reviewing court would have reached a different conclusion or because substantial evidence also exists which would support a contrary

outcome. Id. If after review the court is capable of drawing two inconsistent positions and one of those positions represents the Commissioner's findings, the decision must be affirmed. Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

Schlittenhard argues that the ALJ's findings 5 (discussing Schlittenhard's functional capacity), 10 (discussing the availability of jobs she can perform), and 11 (finding Schlittenhard is not disabled) are unsupported by the record and/or were made inconsistent with applicable law. Whether these findings were made appropriately is essentially the only issue in this matter; thus, each will be discussed separately.

Schlittenhard's Functional Capacity. Schlittenhard argues the ALJ failed to recognize numerous physical, medical, and emotional conditions and limitations that affect her functional capacity. This argument is more or less based on three contentions: 1) that the ALJ failed to adequately consider the opinions of Schlittenhard's treating physicians; 2) that the ALJ failed to adequately consider Schlittenhard's mental health impairments; and 3) that the ALJ failed to give full and complete consideration to Schlittenhard's subjective complaints.

A claimant's residual functional capacity ("RFC") reflects the claimant's ability to function in the workplace. Flynn v. Astrue, 513 F.3d 788, 792 (8th Cir. 2008). An RFC is a medical question, and it must be supported by some medical evidence. Id. While conducting such an analysis, "[a] treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight." Singh v. Apfel, 222 F.3d 448, 452 (citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991). Schlittenhard's regular medical care provider, Helen Reddy, PA-C, opined that due to Schlittenhard's "medical illnesses, including type 2 diabetes, hypertension, hypothyroidism, obesity, migraine headaches, umbilical hernia repair, and intertrigo" she could

not be gainfully employed (Tr. 198). Reddy also noted Schlittenhard's physical limitations and mental/emotional history. Id. However, Reddy's regular assessments of Schlittenhard do not reflect acute distress nor prescribe or advise Schlittenhard avoid activity in a way that would be inconsistent with the findings of the ALJ (Tr. 175 - 97). Moreover, Ms. Reddy is not considered an acceptable medical source under 20 CFR §§ 404.1513 and 416.913. Dr. Napoleon Espejo, a colleague of Ms. Reddy's, estimated that Schlittenhard's "work capacities are very limited," fitting "mostly for sedentary jobs," provided she have control of her mood disorder (Tr. 270). Dr. Espejo's assessment is fully consistent with the ALJ report. In sum, considering 1) Ms. Reddy is not an "acceptable medical source" for purposes of giving an opinion of disability, 2) Ms. Reddy's dictation and notes are more or less consistent with the ALJ's findings, 3) the consistency of Dr. Espejo's assessment, and 4) the consistency of the other treating and consulting physicians' assessments, the Court cannot conclude a reasonable mind would not find the ALJ adequately considered the opinions of Schlittenhard's treating physicians. See Sultan, 368 F.3d at 862.

    The ALJ found that Schlittenhard suffers from numerous mental or emotional problems, most prominently depression and anxiety disorder NOS (Tr. 16). He further found she had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, and one or two episodes of decompensation (Tr. 16-17). These findings are consistent with the April 4, 2003 provisional diagnoses of Dr. Hajek, who estimated Schlittenhard suffered from moderate symptoms resulting in moderate impairment in social and occupational functioning (Tr. 157). During the time of Dr. Hajek's diagnosis, Schlittenhard was functioning with these limitations, working full-time (Tr. 153).

Individual counseling was recommended, but not insisted upon (Tr. 157-57).  Moreover, Schlittenhard did not seek regular treatment for her mental health problems until March 2006, one month before the administrative hearing.  The ALJ may consider that a claimant fails to seek treatment for a claimed mental health problem.  Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995).  Schlittenhard's claim that she suffers from Obsessive-Compulsive Disorder appears to be wholly unsupported by the record; there is simply no such diagnosis in the record before the Court. Furthermore, the RFC analysis conducted by Dr. Buchkoski indicates Schlittenhard is "not significantly limited" in nearly every area of mental and emotional functioning, and was only "moderately limited" in maintaining concentration and responding appropriately to changes in a work setting (Tr. 233-34). Considering all these factors, the Court cannot conclude that the ALJ's findings regarding Schlittenhard's mental health problems were not reasonable.

     The ALJ discussed Schlittenhard's complaints of leg pain, depression, incontinence, foot problems, migraines, and fatigue, in addition to her self-report of the limitations on her daily activities (Tr. 18-19) but did not find her statements regarding the intensity, duration, and limiting effects of her symptoms to be entirely credible (Tr. 19).  The Court cannot conclude that this finding was unreasonable, considering the entire record.  The ALJ discussed each of the Polaski pain factors (specifically noted on Tr. 19), noting Schlittenhard's daily activities (Tr. 18-20), the duration, frequency, and intensity of her pain (Tr. 19-21), the precipitating and aggravating factors (19-20), the effectiveness and side effects of her medication (Tr. 18-19), and her functional restrictions (18-21).  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ noted the lack of objective, consistent medical evidence (Tr. 20), the inconsistencies between Schlittenhard's claimed "inabilities," like going to church, and "abilities," like going to

6

movies (Tr. 20), as well as conflicting testimony from a friend and client (Tr. 19).  It is not improper for the ALJ to consider things such as a claimant failing to seek regular medical treatment or engaging in daily activities inconsistent with the claims.  Siemers, 47 F.3d at 302.  The ALJ did not discount every self-report made by Schlittenhard.  The ALJ did, however, discount the self-reports unsupported or contradicted by medical evidence, other persons, and Schlittenhard's own reports.  If the ALJ considers, but for good reason discredits, self-reports of disabling pain, the ALJ's decision should not be disturbed.  Reed v. Sullivan, 988 F.2d 812, 815 (8th Cir. 1993). Schlittenhard has failed to provide the Court with any legal basis why considering these inconsistencies was unreasonable or improper, and therefore the Court concludes the ALJ's findings were reasonable.

   The Availability of Jobs in the National Economy

Because Schlittenhard was able to show she is unable to perform her past relevant work, the Commissioner bore the burden to prove Schlittenhard was able to perform other jobs in the national economy, consistent with her RFC, age, education, and work experience.  Sykes v. Bowen, 854 F.2d 824, 286 (8th Cir. 1988).  Neither party disputes the ALJ's findings as to Schlittenhard's age, education, or work experience.  Although Schlittenhard disputes the ALJ's findings as to her RFC, the record reasonably supports his conclusions.  Once these factors (RFC, age, education, and work experience) are established, the ALJ must examine the tables in Appendix 2 to Part 404 and consider the testimony of a vocational expert.  Reed v. Sullivan, 988 F.2d 812, 816 (8th Cir. 1993) (holding that if a claimant suffers from limiting non-exertional impairments, the ALJ cannot rely exclusively on the guidelines and must utilize the testimony of a vocational expert).  The vocational expert testified that a person with Schlittenhard's

vocational profile could perform a job within "the full range of sedentary work," and gave three representative examples of such positions: assembler, sedentary inspector, and sedentary sorter. (Tr. 312-13).  She testified that there are 850 sedentary assembler jobs in North Dakota, 20,000 in Minnesota, and more than 500,000 in the national economy (Tr. 314).  There are 430 sedentary inspector jobs in North Dakota, 8,460 in Minnesota, and 577,650 nationwide (Tr. 314).

The vocational expert testified that, if she gave full credibility to Schlittenhard's testimony, including her need to sleep for four to five hours every day, there would be no jobs in the national economy reasonably available to her (Tr. 315).  However, a hypothetical posed to a vocational expert "need only include impairments that are supported by the record and that the ALJ accepts as valid."  Howe v. Astrue, 499 F.3d 835, 842 (8th Cir. 2007) (citing Prosch v. Apfel, 201 F.3d 1010, 1015 (8th Cir. 2000).  Therefore, considering the credibility determinations made by the ALJ and the remaining evidence in the record, it must be concluded that the ALJ's findings as to the availability of jobs for Ms. Schlittenhard are supported by substantial evidence.

Whether Schlittenhard is "Disabled."

In determining whether a claimant is disabled, the ALJ conducts the five-step analysis set forth under 20 C.F.R. § 404.1520.  This analysis examines:  (1) whether the claimant currently engaged in substantial gainful activity; (2) whether the claimant have a severe impairment or combination of impairments; (3) whether the impairments meet or equal an impairment listed at 20 C.F.R. Part 404, Subpart P, App. 1 (If so, disability is automatic); (4) whether the impairment prevent the claimant from doing past relevant work; and (5) whether the impairment prevent the claimant from performing any other work that exists in the regional or national economy in

significant numbers. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); 20 C.F.R. §404.1520. When a determination that an individual is or is not disabled can be made at any step, evaluation under a subsequent step is unnecessary. See, Bartlett v. Heckler, 777 F.2d 1318, 1319 (8th Cir. 1985).

Here, the parties do not dispute the ALJ's findings as to steps (1), (2), (3) and (4). It is agreed between the parties and supported by the record that Schlittenhard has not been engaged in substantial gainful activity at any time relevant to these proceedings; that Schlittenhard is afflicted with several severe impairments, including morbid obesity, diabetes, migraine headaches, depression, and anxiety; that none of those impairments meet or medically equals Appendix 1 in 20 CFR Part 404, Subpart B; and that Schlittenhard is unable to perform any past relevant work. Therefore, only step (5), whether the impairment prevents Schlittenhard from performing any other work that exists in the regional or national economy in significant numbers, 20 C.F.R. § 404.1520, is in dispute. At this final stage, only, is it permitted to consider the claimant's age, education and work experience in light of his or her residual functional capacity. McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §404.1520.

As discussed in this Opinion, the ALJ fully considered Schlittenhard's age, education, and experience in light of her RFC. He considered her subjective complaints, medical records, and the testimony of a vocational expert. The ultimate determination that Schlittenhard is not "disabled" as set forth in 20 C.F.R. § 404.1520 is reasonably supported by the record.

## CONCLUSION

The Commissioner's findings are supported by substantial evidence in the records as a whole. See Dixon, 353 F.3d at 604. It is therefore **ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

Let judgment be entered accordingly.

Dated this 31st day of March, 2008.

                                                  */s/     Ralph R. Erickson*
                                                Ralph R. Erickson, District Judge
                                                United States District Court